ROY L. WIGINTON, Plaintiff-Appellee, Cross-Appellant, *v.* PACIFIC CREDIT CORPORATION, dba CITY COLLECTORS, Defendant-Appellant, Cross-Appellee, and STATE OF HAWAII, by WALTER T. YAMASHIRO, Director of the Office of Consumer Protection, Applicant for Intervention

NO. 7165

CIVIL NO. 50122

SEPTEMBER 21, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY BURNS, J.

In this suit for relief against unfair and deceptive collective practices, Defendant Pacific Credit Corporation, dba City Collectors, appeals the granting of summary judgment in favor of Plaintiff Roy L. Wiginton and the denial of its cross-motion for summary judgment; Wiginton cross-appeals the failure to award him reasonable attorney's fees. We affirm in part and reverse in part.

The primary issues on appeal are as follows:

(1) Whether the trial court erred in not invoking the doctrine of primary jurisdiction. The issue is moot.

(2) Whether the trial court abused its discretion when it refused to dismiss Wiginton's suit for his failure to prosecute. Affirmed.

(3) Whether the trial court erred in concluding that the Release given by Wiginton to his creditor did not release his claims against City Collectors. Reversed.

(4) Whether the trial court erred in finding, as a matter of law, that Wiginton established his right to damages under Hawaii Revised Statutes (HRS) § 480-13 (1976, as amended) by showing that he was wrongfully induced to pay money or incur expenses beyond an existing obligation as a result of a *per se* statutory violation. Reversed.

(5) Whether the trial court erred in.deciding that Wiginton's request for a permanent injunction was not moot. Affirmed.

(6) Whether the trial court erred in failing to award Wiginton reasonable attorney's fees. Affirmed.

Under Rule 56, Hawaii Rules of Civil Procedure (HRCP), a plaintiff moving for summary judgment is entitled to judgment as a matter of law if the record shows no genuine issue as to any material fact. *Technicolor Inc. v. Traeger*, 57 Haw. 113, 118, 551 P.2d 163, 168 (1976). For purposes of this appeal, the facts and inferences drawn from them will be viewed in the light most favorable to City Collectors. *Iuli v. Fasi*, 62 Haw. 180, 184, 613 P.2d 653 (1980).

On June 30, 1972, Wiginton executed a contract with Peoria Motors, Inc., of Peoria, Illinois, for the purchase of a new truck for $6,644.92. Wiginton financed the purchase through Jefferson Trust and Savings Bank of Peoria (Jefferson Bank). Wiginton then moved to New York. Before he moved to Hawaii in 1974, Wiginton, with the Jefferson Bank's permission, sold the truck and applied the "majority" of the proceeds to the debt.[1]

On January 20, 1976, Wiginton suffered an injury and since that time has been unable to work. The record does not tell us what, if anything, occurred with respect to the debt between the application of the sales proceeds and Wiginton's injury.[2]

On or about March 4, 1976, City Collectors, as the Jefferson

---

[1] The record does not tell us how much was paid or how much remained due after the payment.

[2] Wiginton's contract with Jefferson Trust and Savings Bank included a disability insurance provision; in his deposition, Wiginton stated he believed the disability insurance would cover the delinquent payments.

Bank's assignee for collection, sent a demand for payment to Wiginton as follows:

| DEMAND FOR PAYMENT | CREDITORS STATEMENT |
|---|---|
| **CREDITOR(S)**     **DATE**<br><br>Jefferson Trust & Savings<br>  Bank           3/4/76 | Total Amount<br>Past Due      $1284.43[3] |
| Roy Wiginton<br>543 Wailepo St., A-3<br>Kailua, Hawaii 96734 | Probable<br>Expense of<br>Legal Process  $1000. |
| | TOTAL       $2284.43 |

This private notice is sent to you in order to save additional costs.

### TO THE ABOVE NAMED DEBTOR

DEMAND is hereby made upon you for PAYMENT, on or before 3/8/76[4] of the TOTAL sum past due, on the above claim. You are hereby notified that in the event that this notice is not honored within the time allowed, STATUTORY PROCESS will be instituted to enforce payment, WITHOUT further notice whatever being sent you.

TO AVOID further action, REMIT AT ONCE by Check, money order or cash, to our office.

CITY COLLECTORS
a division of
PACIFIC CREDIT CORPORATION
P. O. BOX 3678 — Honolulu, Hawaii 96811
Phone (808) 536-7011

\*   \*   \*   \*   \*

(Footnotes added.) City Collectors claims not to have intended to collect from Wiginton any pre-suit payments in excess of $1,284.43,

---

[3] [4] These figures were circled by hand.

but only to have included the probable attorney's fees in the belief that if a trial were necessary, taxable costs as set forth in HRS § 607-14 (1976) would be incurred.

Upon receipt of the demand for payment, Wiginton became greatly distressed as it appeared to him that City Collectors was requiring him to pay $2,284.43 to cover the probable expenses of $1,000.00 as well as the basic $1,284.43. Immediately after receipt of the demand, he sent City Collectors a money order in the amount of $10.00 and then consulted his attorney. City Collectors subsequently sent a receipt for the $10.00, dated March 10, 1976. The receipt shows that the amount of the account had been $1,284.43, that the amount paid was $10.00, that the payment was by money order, and that the balance due was $1,274.43.

On October 22, 1976, Jefferson Bank filed with the District Court of the First Circuit a complaint against Wiginton for the $1,274.43, the same debt alleged in the demand for payment minus the $10.00 sent, plus the costs of court, interest, and attorney's fees (Civil No. P76-803). On March 2, 1977, this law suit was dismissed with prejudice pursuant to a Compromise Settlement and Mutual Release Agreement (Release) dated February 16, 1977. Wiginton incurred no liability for either the alleged debt or the legal costs. City Collectors was not a named party to the Release.

On December 7, 1976, Wiginton filed his complaint against City Collectors, praying for injunctive relief and damages pursuant to HRS § 480-13 (1976, as amended),[5] alleging out-of-pocket loss by

---

[5] § 480-13 *Suits by persons injured; amount of recovery, injunctions.* (a) Any person who is injured in his business or property by reason of anything forbidden or declared unlawful by this chapter:

(1) May sue for damages sustained by him, and, if the judgment is for the plaintiff, he shall be awarded a sum not less than $1,000.00 or three-fold damages by him sustained, whichever sum is the greater, and reasonable attorneys fees together with the cost of suit; provided that no showing that the proceeding or suit would be in the public interest (as these terms are interpreted under section 5(b) of the Federal Trade Commission Act) is necessary when the party against whom the proceeding or suit is brought is a merchant as that term is defined in chapter 490; and

(2) May bring proceedings to enjoin the unlawful practices, and if the decree is for the plaintiff, he shall be awarded reasonable attorneys fees together with the cost of suit.

(b) The remedies provided in this section are cumulative and may be sought in one action.

\* \* \* \*

reason of receiving a deceptive demand for payment form. The complaint alleged specific violations of HRS §§ 443-44 (1976)[6] and 443-45 (1976),[7] which constituted unfair and deceptive practices under HRS §§ 443-47 (1976)[8] and 480-2 (1976).[9]

City Collectors moved to stay all proceedings until the court determined the primary jurisdiction issue. On March 9, 1977, the trial court orally denied City Collectors' motion and orally ordered Wiginton to file a petition with the State of Hawaii Collection Agency

---

[6] § 443-44 *Fraudulent, deceptive, or misleading representations.* No collection agency shall use any fraudulent, deceptive, or misleading representation or means to collect, or attempt to collect, claims or to obtain information concerning a debtor or alleged debtor, including any conduct which is described as follows:

\* \* \* \*

(4) The failure to clearly disclose the name and full business address of the person to whom the claim has been assigned for collection or to whom the claim is owed at the time of making any demand for money;

(5) Any false representation or implication of the character, extent, or amount of a claim against a debtor or alleged debtor, or of its status in any legal proceeding;

\* \* \* \*

(8) Any representation that an existing obligation of the debtor or alleged debtor may be increased by the addition of attorney's fees, investigation fees, service fees, and any other fees or charges when in fact such fees or charges may not legally be added to the existing obligations; or

\* \* \* \*

[7] § 443-45 *Unfair or unconscionable means.* No collection agency shall use unfair or unconscionable means to collect or attempt to collect any claim in any of the following ways:

\* \* \* \*

(3) The collection of or the attempt to collect from a debtor or alleged debtor all or any part of the collection agency's fees or charge for services rendered;

(4) The collection of or the attempt to collect any interest or other charge, fee, or expense incidental to the principal obligation unless the interest or incidental fee, charge, or expense is expressly authorized by the agreement creating the obligation and legally chargeable to the debtor or alleged debtor; or unless such interest or incidental fee, charge or expense is expressly authorized by law; and

\* \* \* \*

[8] § 443-47 *Unfair competition, unfair or deceptive acts or practices.* A violation of this part by a collection agency shall constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce for the purpose of section 480-2.

[9] § 480-2 *Unfair competition, practices, declared unlawful.* Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

Board (hereinafter "Board"), requesting that rules and regulations be drafted regarding the prohibited practices part of HRS chapter 443 (1976, as amended)[10] and orally issued a temporary restraining order against City Collectors' use of its demand form. Although proposed orders were submitted by both parties, no orders were ever signed until April 7, 1978, when the trial court entered an order denying the motion to stay all proceedings.

On January 23, 1978, pursuant to Rule 12(f) of the Rules of the Circuit Court, the circuit court *sua sponte* issued a notice of proposed dismissal.

Wiginton objected. City Collectors supported the dismissal, citing Wiginton's lack of prosecution and the mootness of the injunctive relief issues since the demand form was no longer in use. The trial court sustained Wiginton's objections to dismissal.

On March 10, 1978, City Collectors filed an amended answer, alleging as an additional affirmative defense that Wiginton released all claims against City Collectors by the Release agreement with Jefferson Bank.

Cross-motions for summary judgment were heard on May 31, 1978. At that time the court denied City Collectors' motion and granted Wiginton's; a final order granting summary judgment, damages, and a permanent injunction was entered on July 27, 1978.

## PRIMARY JURISDICTION

Appellant first contends the trial court erred in not invoking the doctrine of primary jurisdiction[11] and affording the Collection

---

[10] The "Prohibited Acts and Practices" part of HRS chapter 443, which was enacted into law by Act 74 of the 1973 Legislature, specifically provided, in HRS § 443-46, that "[t]he collection agency board shall promulgate rules and regulations, pursuant to chapter 91, for the purposes of administering and enforcing this part." However, the Board's executive secretary advised the trial court that "[i]t was the Board's feeling that the statute was sufficiently definitive to not require any such rules."

[11] The doctrine of primary agency jurisdiction,* basically a federal concept, is a flexible concept concerned with "promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties," *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303 (1976), quoting *United States v. Western Pacific*

Agency Board the opportunity to rule upon the "demand for payment form."

*Sua sponte* we decline to decide this issue because it is moot. *Territory by Choy v. Damon,* 44 Haw. 557, 356 P.2d 386 (1960), *rehearing denied* 44 Haw. 633, 361 P.2d 63 (1961), *cert. denied* 368 U.S. 838 (1961). We cannot decide to send this case first to the Collection Agency Board because it was sunsetted effective December 31, 1980, by HRS § 26H-4 (Act 70, 1977 session, as amended by Act 76, 1979 session).

### DISCRETION TO DISMISS

Appellant next contends that the trial court abused its discretion in not dismissing the law suit pursuant to Rule 41(b), HRCP, because of Wiginton's "contumacious conduct." In view of *Bagalay v. Lahaina Restoration Foundation,* 60 Haw. 125, 588 P.2d 416 (1978), and *Ellis v. Bartholomew and Associates* 1 Haw. App. 420, 620 P.2d 744 (1980), we disagree.

### RELEASE

City Collectors next argues that the trial court erred in concluding as a matter of law that the Release given by Wiginton to Jefferson Bank did not release his claims against City Collectors. We agree.

---

*Rail Company,* 352 U.S. 59, 63 (1956). The doctrine is considered when a court, having unquestioned jurisdiction over a case involving matters governed by an administrative agency, determines whether the administrative agency should make the initial adjudication. The court's jurisdiction is thus postponed. *United States v. Philadelphia National Bank,* 374 U.S. 321, 353 (1963); K. C. Davis, *Administrative Law Treatise,* Sec. 19.01, at 435, supplement 1976 (1976).** The court's discretion in exercising the doctrine is guided by considerations of uniformity of regulation, flexibility of procedure, and the need for special expertise in the issue presented. *See Far East Conference v. United States,* 342 U.S. 570, 574-75 (1952); *Nader, supra,* at 304. No fixed formula exists for applying the doctrine. *Western Pacific Rail Company, supra,* at 64.

---

\* *See generally* K. C. Davis, *Administrative Law Treatise,* Vol. 3, Sections 19.01-19.09 (1958).

\*\* By contrast, exhaustion of remedies is a doctrine governing judicial review of administrative action and "applies where a claim is cognizable in the first instance by an administrative agency alone. . . ." *See United States v. Western Pacific Rail Company, supra,* at 63.

"A compromise and settlement should be construed to include only those matters the parties intended to include; it should not be construed to extend to other matters." (Footnotes omitted) 15A AM. JUR.2d *Compromise and Settlement* § 23 (1976).

In view of the fact that Jefferson Bank is not a party to the deceptive collection practice or to this suit, it is quite possible that the Release was not intended to cover Wiginton's claims against City Collectors.

However, City Collectors is Jefferson Bank's assignee and the Release literally states that Wiginton forever discharges Jefferson Bank's assigns from all past, present, and future claims including, but not limited to, claims based on the June 30, 1972, contract and on claims included within Civil No. P76-803.

We hold that the issue of the extent of the coverage of the Release is a question of fact and that it was error to decide it via summary judgment.

### DAMAGES

Appellant contends that Wiginton did not, as a matter of law, prove his right to damages under HRS § 480-13 (1976, as amended). We agree.

The Hawaii Supreme Court and this court have recently construed HRS §§ 480-2 (1976) and 480-13 (1976, as amended). *See Island Tobacco Co., Ltd. v. R. J. Reynolds Tobacco Company*, 63 Haw. 289, 627 P.2d 260 (1981); *Ai v. Frank Huff Agency, Ltd.*, 61 Haw. 607, 607 P.2d 1304 (1980); *Ailetcher v. Beneficial Finance Company*, 2 Haw. App. 301, 632 P.2d 1071 (1981); *Beerman v. Toro Manufacturing Corp.*, 1 Haw. App. 111, 615 P.2d 749 (1980).

According to these cases, the four essential elements of a cause of action under HRS § 480-13 (1976, as amended) are: "1) a violation of chapter 480; 2) injury to plaintiff's business or property resulting from such violation; 3) proof of the amount of damages; and 4) a showing that the action is in the public interest or that the defendant is a merchant." *Ai, supra,* at 617. Where these four essential elements are proved, HRS § 480-13 (1976, as amended) entitles the party proving them to an award of not less than $1,000.00 or triple damages, whichever sum is the greater.

Here, the first element is satisfied because the demand for pay-

ment form violated at least HRS §§ 443-4(4) and (8) (1976).[12]

The fourth element is satisfied because Wiginton has proved a *per se* violation of the statute. *Ai, supra,* at 615.

The second element will be satisfied when Wiginton proves "that injury occurred to personal property through a payment of money wrongfully induced." *Ai, supra,* at 614 (citation omitted).

The third element will be satisfied when Wiginton proves the amount of the damages caused by the injury.

Thus the issue is whether Wiginton proved the second and third elements.

Wiginton's claims of injury to his property consisted of the $10.00 remitted to City Collectors and approximately $15.00 in out-of-pocket expenses for the money order, gasoline, wear and tear on his car, and parking expenses for consulting an attorney concerning the legal obligation to City Collectors and to Jefferson Bank. Since *Ai* does not allow Wiginton to claim as damages payments made to an existing obligation, Wiginton must show (1) that there was no debt or (2) that insurance was available to pay the debt or (3) that expenses were incurred because of the statutory violation and not because of a valid debt. *Id.*

City Collectors argues that the *de minimus* damages asserted by Wiginton should not qualify as the damages required to maintain an action under HRS § 480-13 (1976, as amended). However, the legislature was aware that damages might be *de minimus* in a consumer protection action and specifically provided for the $1,000.00 award or triple damages to cover that possibility.[13]

---

[12] *See* n.6, *supra,* re maximum fees allowed.

HRS § 443-23 *Fees.* A licensee shall not collect, or attempt to collect, any collection fee or attorney's fee or commission from any debtor; provided however, attorney's fee or commission may be collected after filing of a suit against any debtor and such fee or commission shall not be in excess of twenty-five per cent of the unpaid principal balance. All attorney's fees or commissions collected by a licensee shall be remitted to the attorney and no portion of said collection shall be retained by the licensee.

*See Smothers v. Renander,* 2 Haw. App. 400, 633 P.2d 556 (1981), re the allowance of costs.

[13] Stand. Comm. Rep. No. 600 on S.B. 1014 (L. 1969 ch. 108), Sen. Comm. on Cons. Prot. and Crim. Code Rev. 1969 Sen. Jour. 1111 (1969); Stand. Comm. Rep. No. 661 on S.B. 1014 (L. 1969, ch. 108), House Comm. on Housing and Cons. Prot., 1969 House Jour. 882-883 (1969).

The issue in this case is whether Wiginton was wrongfully induced by the statutory violation(s) to pay money on a debt that was not owed or to incur expenses that would not otherwise have been incurred. In our opinion that issue is an issue of fact which precluded summary judgment.

## INJUNCTION

The trial court, pursuant to HRS § 480-13 (1976), enjoined City Collectors from continuing its deceptive collection practices. City Collectors argues that its voluntary compliance made the issue moot. We disagree. First, the record indicates that acts complained of, that is, the sending of deceptive demand forms, were still occurring at least as late as January 1978. Second, even if City Collectors had voluntarily reformed, wrongful behavior could recur. *See State v. Ralph Williams North West Chrysler Plymouth, Inc.,* 82 Wash.2d 265, 272, 510 P.2d 233, 238 (1973), *appeal dismissed* 430 U.S. 952 (1977). *See also Vitek v. Jones,* 445 U.S. 480, 487 (1980); *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979); *United States v. Concentrated Phosphate Export Ass'n, Inc.,* 393 U.S. 199, 202-204 (1968); *People Ex Rel. Babbit v. Green Acres Trust,* 127 Ariz. App. 160, 618 P.2d 1086 (1980). Third, the trial judge possesses broad discretion to grant or deny equitable relief. *United States v. W. T. Grant Co.,* 345 U.S. 629, 633 (1953); *Sandstrom v. Larsen,* 59 Haw. 491, 583 P.2d 971 (1978). We hold that the trial judge did not abuse his discretion in issuing the injunction.

## ATTORNEY'S FEES

Wiginton contends that the trial court erred in not awarding him reasonable attorney's fees.[14] He does not complain about the trial court's failure to award costs, but we will address that issue also.

In his complaint and in his motion for summary judgment and in his memorandum in support of the proposed judgment, Wiginton asked for costs and fees. However, he did not otherwise bring the matter to the lower court's attention either before or after the entry

---

[14] *See* n.5, *supra.*

of the Findings of Fact, Conclusions of Law, Permanent Injunction and Judgment.[15]

We do not construe the lower court's silence on the question of costs and fees as being its denial thereof. Trial courts normally do not award costs and fees absent proper affidavits.

The issue is whether Wiginton's failure to submit proper affidavits bars him from obtaining costs and fees. We answer not yet. The issues of costs and fees may be decided prior to entry of the judgment; if not, then they may be decided within a reasonable time after judgment is entered. However, if an appeal on the merits is taken before an award of costs and fees, then the lower court loses its jurisdiction to award them until disposition of the appeal. *D'Elia v. Association of Apartment Owners of Fairway Manor,* 2 Haw. App. 350, 632 P.2d 298 (1981). If the appeal results in a new trial, then the parties are back to square one as far as costs and fees are concerned. If the appeal results in a judgment, then within a reasonable time thereafter the lower court may award costs and fees to the party entitled thereto. If the issues of costs and fees are decided after judgment, each decision may be appealed pursuant to HRCP, Rule 73. *See Brown v. Tokuda,* 49 Haw. 311, 417 P.2d 636 (1966).

City Collectors argues that fees should not be awarded to Wiginton who is represented by the Legal Aid Society of Hawaii (LASH) since he has not incurred any attorney's fees and would thus be unjustly enriched. Although one purpose of granting attorney's fees is to make the plaintiff whole, another purpose is to encourage private enforcement of certain statutes. *See Kessler v. Associates Financial Services Co. of Hawaii, Inc.,* 639 F.2d 498, 499 (9th Cir. 1981); *Hannon v. Security National Bank,* 537 F.2d 327, 328 (9th Cir. 1976).

Statutory awards of attorney's fees are designed to "deter the defendant and others like him from wrongful action and to induce settlement in future cases without the necessity of resorting to the courts." *See* Note, *Awards of Attorney's Fees to Legal Aid Offices,* 87 HARV. L. REV. 411, 417 (1973).

Numerous courts have awarded attorney's fees to legal services corporations for successful consumer protection actions. *See, e.g.,*

---

[15] Interestingly, this document was prepared by City Collectors' attorney and approved as to form by Wiginton's attorney.

*Manning v. Princeton Consumer Discount Company*, 533 F.2d 102 (3rd Cir. 1976), *cert. denied*, 429 U.S. 865 (1976); *Powers v. Simms & Levins*, 542 F.2d 1216 (4th Cir. 1976); *Sellers v. Wollman*, 510 F.2d 119 (5th Cir. 1975); *Kessler v. Associates Financial Services, Inc., supra.*

We agree that Wiginton should not receive a windfall, but if Wiginton can show that he is legally obligated to pay to LASH whatever fees he receives, then attorney's fees may be awarded.[16]

The denial of City Collectors' motion for summary judgment is affirmed, the summary judgment in favor of Wiginton is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

*Matthew J. Yingling (James M. Sattler* with him on the briefs) for appellant, cross-appellee.

*John Harris Paer (Richard S. Kanter* with him on the briefs), Legal Aid Society of Hawaii, for appellee, cross-appellant.

---

[16] Federal regulations applicable to LASH require that when a legal fee is awarded in a case represented by a Legal Aid Society which receives federal funding, the legal fee must be promptly remitted to the Legal Aid Society. 45 C.F.R. § 1609.5(b) (1978).